[Cite as *State v. Williams*, 2013-Ohio-1297.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-T-0002** |
| JOSHUA ALLEN WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 10 CR 793.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor, and *LuWayne Annos,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow,* 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} After trial by jury, appellant Joshua A. Williams, was convicted of felony domestic violence. He now appeals, inter alia, the judgment of conviction entered by the Trumbull County Court of Common Pleas. We affirm.

{¶2} In October 2010, appellant, his girlfriend, Ashley Buskirk ("Ashley"), and the couple's three-year-old daughter lived together in a small trailer in Vienna Township. Appellant and his friend, Ryan Castle, left a construction job in Columbus, Ohio early, on October 22, 2010, to surprise Ashley. On the way, appellant purchased four cans of

Sparks, a malt liquor beverage, which he and his counterpart consumed while driving to Vienna. At approximately 11:30 a.m., appellant and Ryan arrived at the trailer. Ashley was getting ready to go to the mall and meet a friend. Appellant became immediately upset because, according to him, Ashley lied when she had previously told him she had no plans for the day.

{¶3} With the couple's three-year-old looking on, appellant hurled various imprecations and insults at Ashley and ultimately demanded she leave the trailer. When Ryan urged appellant to calm down, appellant questioned why Ryan was "defending this whore." In an effort to diffuse the situation, Ryan placed his hand on appellant's shoulder; appellant, however, wrestled his friend to the ground and placed a choke hold around his neck. During this skirmish, Ashley struck appellant multiple times in an effort to stop the attack. Appellant ultimately released Ryan from the choke. Following the scrum, Ashley threw her ring at appellant and went to her bedroom to pack her toiletries and clothes.

{¶4} Appellant followed Ashley into the trailer's hallway and a shoving match ensued. Ashley intended on leaving with the couple's daughter, but appellant blocked Ashley's exit. Ashley pushed appellant who responded in kind. As the physicality increased, Ashley entreated Ryan to call 911. As he was under-age and intoxicated, however, Ryan ignored the plea and left the trailer. Appellant eventually shoved Ashley into the bedroom where she stumbled backward onto the bed. Appellant then crawled on top of Ashley and applied two separate chokes to her throat. While struggling to break appellant's restraint, Ashley kicked appellant in the head. Appellant released his grip and Ashley left the bedroom. Ashley retrieved the couple's daughter and went to her car with appellant in tow. As Ashley placed the young girl in her car seat, appellant

2

confronted Ashley and applied a third choke to her throat. Appellant then seized the couple's daughter as Ashley kicked appellant in the lower leg several times. Appellant returned to the trailer with the couple's daughter while Ashley left with the intention of speaking to police.

{¶5} When Ashley arrived at the Vienna Township Fire Station, which is located near the police station, she was visibly shaken and upset. Paramedic Eric Crowe noted she was rubbing her neck and holding her upper torso. He further observed redness around Ashley's throat and neck area. He assessed Ashley and, although Ashley was not seriously injured, she told the paramedic appellant had assaulted her by being "choked and tossed about by [the] neck."

{¶6} Vienna Township Police Chief, Brian Darby, arrived and also noticed red marks on the left side and front of Ashley's neck. Chief Darby took Ashley's statement in which she reported she and appellant had been drinking and, after a brief but volatile argument, he choked her several times. Ashley stated her daughter was with appellant and she feared for the young girl's safety. Chief Darby left to question appellant. The officer arrived at the trailer and announced his presence. Appellant did not immediately answer. After several minutes, however, appellant came to the door. The officer noted appellant's apparent intoxication and observed no fresh injuries to appellant's person. Appellant was ultimately arrested and later indicted on one count of felony-four domestic violence.

{¶7} During appellant's jury trial, Ashley testified to a significantly white-washed version of the altercation. She stated that, although she and appellant did shove one another, appellant did not choke her, but merely restrained her arms. Upon the state's motion, the court declared Ashley a "court witness" pursuant to Evid.R. 614(A) after

3

which the prosecutor impeached Ashley's testimony with prior statements and testimony.

{¶8} During the prosecutor's examination, the jury heard that Ashley had previously testified before the grand jury that appellant "pushed me into the bedroom, shut the door, got on top of me, choked me, and yelled in my face telling me he wants to know how it feels to die." The jury also heard Ashley's previous testimony that, as she went to leave the bedroom, appellant "grabbed me again on the bed and choked me again. It lasted probably almost 30 seconds, to the point of almost blacking out, and I had my daughter in the background screaming." The jury finally heard prior testimony that, as Ashley was fastening her daughter into her car seat, appellant choked her a third time in which she nearly blacked out. Ashley specifically confirmed each of these episodes and conceded that, during each of the three altercations, appellant had choked her.

{¶9} Testifying on his own behalf, appellant asserted that, although he initiated the argument, Ashley started the physical altercation by shoving him. He also testified that he did not choke Ashley; rather, he claimed he merely restrained her in self-defense.

{¶10} After deliberations, appellant was found guilty of the domestic violence charge and sentenced to a fifteen-month term of imprisonment. He now appeals and assigns three errors for this court's review. His first assignment of error provides:

{¶11} "The trial court erred and abused its discretion by permitting the submission of taped recordings, which were not in any fashion redacted, to the jury."

{¶12} Appellant asserts the trial court committed reversible error when it permitted the jury to hear the entirety of four recorded jailhouse phone conversations

4

between appellant and his mother when only portions of those conversations were played in open court.

{¶13} Initially, for purposes of background, it is unclear what portions of the phone conversations were played for the jury. It is clear, however, that the conversations were not played in their entirety. After the recordings were heard by the jury, defense counsel made the following objection: "Your honor, I understand the state's desire for brevity, but the state cut off two of the calls slightly short, and, well, I just need to note my objection to that." The trial court advised defense counsel that he could play the complete tapes if he wished. The prosecutor, however, objected to the court's decision, arguing: "He can't offer them, they're admission of a party opponent, that's the only way that they're admissible. He can't play them and the rule of completeness does not apply." Defense counsel responded that, in his view, the rule of completeness did apply and therefore the entirety of the recording should be played to the jury.[1] The court noted the objections for the record, but did not require the state to play the complete recording.

{¶14} After the state rested, it sought admission of the recordings. Defense counsel again objected to their admission claiming the recordings included inadmissible hearsay. The prosecutor reiterated his position that the recordings were admissions of

---

1. Although appellant does not contest this specific issue, it is worth noting that Evid.R. 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it." This rule is a codification of the common law "rule of completeness." *State v. Matthews*, 2d Dist. No. 24233, 2011-Ohio-5066, ¶23. Under this rule, a party may introduce any other document, recording, or part thereof "when one party has made use of a portion of a document [or recording], such that misunderstanding or distortion can be averted only through presentation of another portion." *Beech Aircraft Corp.v. Rainey*, 488 U.S. 153, 172 (1988). Here, we have no way of knowing which portions of the recordings were omitted from the jury's consideration during the presentation of evidence. There is no allegation, however, that the recording, as played, distorted the content of the conversation of the failure to play the entire recording contemporaneously with the selected portions rendered the evidence unfair. In this respect, the defense did not, at trial, establish a violation of Evid.R. 106.

a party opponent. The prosecutor also revisited defense counsel's previous objection relating to the incomplete recordings. The prosecutor emphasized that the state played the shortened versions merely for brevity. And, in any event, the entirety of the recordings were disclosed to the defense, who failed to identify any exculpatory material in the un-played portions of the conversations. The court admitted the recordings, in their entirety, noting they were admissible as admissions of a party opponent and, in addition, they were excepted from the hearsay prohibition as a "business record kept in the ordinary course of business."

{¶15} Appellant does not specifically contest the court's ruling on the general admissibility of the recordings. Rather, he contends the trial court erred by admitting the "unredacted" recording for the jury to hear in its entirety. In essence, appellant appears to assert the trial court erred in allowing the jury to hear evidence that was apparently irrelevant and potentially prejudicial. We do not agree.

{¶16} First of all, trial counsel actively sought admission of the entire recording at trial. And, although it was not played at trial, the court gave the jury the whole recording to hear if it chose to listen. Thus, defense counsel eventually received what he originally requested. On appeal, however, appellant incongruously challenges the court's decision to permit the jury to hear the whole recording. To the extent appellate counsel is not arguing trial counsel's ineffectiveness on appeal, we find it somewhat disingenuous to argue error when the trial court acted in accordance with trial counsel's original request.

{¶17} That said, however, we will not reverse the decision to admit unredacted recordings if the error was harmless. *State v. Hartman*, 9th Dist. Nos. 10CA1126-M and 10CA0031-M, 2012-Ohio-745, ¶20. "[W]hen an error or defect made by the trial court

6

does not affect a defendant's substantial rights, the error is harmless and we will not reverse the court's judgment." *State v. Standifer*, 12th Dist. No. CA2011-07-71, 2012-Ohio-3132 ¶36, citing Crim. R. 52(A).

{¶18} Appellant fails to identify, and the record does not disclose, what portions of the recordings were omitted from evidence and what portions were played. Without some evidence defining the substance of the omitted portions of the recordings, this court has no way of evaluating whether appellant was prejudiced by the court's submission of these portions to the jury. On this basis alone, we cannot conclude appellant suffered a violation of his substantial rights.

{¶19} Furthermore, appellant's argument is premised upon the purported dearth of evidence introduced by the state to support a conviction. To wit, appellant notes that the only witness to the altercation was the victim. Because her testimony was inconsistent, he argues the evidence was not credible. Appellant maintains, consequently, the recordings were necessary for the state to prove its case. And, as a result, appellant appears to argue that the introduction of the entirety of the recordings was presumptively prejudicial; appellant fails, however, to offer any supporting authority for his proposition.

{¶20} While the necessity of the recordings is debatable, we fail to discern how, without some supporting authority, the introduction of the entirety of the recordings should be presumed prejudicial. Although appellant, perhaps correctly, criticizes the trial court's decision to permit the full recordings, he has failed to affirmatively demonstrate the court's action was, in these circumstances, unreasonable, unfair, or otherwise unlawful. And we are aware of no authority that would permit a reviewing

7

court to infer prejudice from an absence of evidence. Appellant's argument, consequently, lacks merit.

{¶21} Finally, the testimony of the victim, the attending paramedic, responding officers, and Mr. Castle is essentially consistent with the substantive information disclosed on the recordings. To the extent the admissions on the recordings were cumulative of other evidence properly admitted, we fail to see how appellant could have been prejudiced by the court's admission of the full recordings. Hence, even assuming the court committed some procedural error in not requiring the recordings to be redacted so as to limit their content to that played during the reception of evidence, any such error would be, in this case, harmless as a matter of law.

{¶22} Appellant's first assignment of error is without merit.

{¶23} For his second assignment of error, appellant asserts:

{¶24} "The trial court erred by refusing to give a jury instruction on the issue of self defense."

{¶25} Appellant claims the trial court erred when it declined to instruct the jury on the affirmative defense of self-defense. We do not agree.

{¶26} This court has observed that a defendant is entitled to an instruction on self-defense to the extent there is some evidence on each of the following three elements: "'(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *State v. Kovacic*, 11th Dist. No. 2010-L-065, 2012-Ohio-219, ¶22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 2002-Ohio-68. "An appellate court can

8

only reverse a trial court's refusal to give a defendant's requested instruction upon a showing of abuse of discretion by the trial court." *State v. Strickland*, 11th Dist. No. 2005-T-0002, 2006-Ohio-2498, ¶24.

{¶27} In this case, the trial court ruled appellant was not entitled to an instruction on self-defense because the evidence demonstrated he was at fault in creating the situation giving rise to the physical confrontation. For the following reasons, we find the trial court did not err in declining to give the jury instructions for self defense.

{¶28} During her testimony, Ashley described three discrete times during which she was choked. Regarding the first incident, the evidence demonstrated that when Ashley attempted to leave the trailer, appellant blocked her path; in response, Ashley shoved appellant who, in turn, shoved Ashley into the bedroom. During the subsequent struggle, which occurred on the bed, appellant choked Ashley. Appellant asserts Ashley's act of pushing was the catalyst for the physical altercation and thus he was entitled to an instruction on self-defense. We do not agree.

{¶29} Although Ashley pushed first, she testified she did so because appellant would not let her pass. She stated appellant was blocking her access to her child and, as a result, she attempted to push through to retrieve the young girl. This evidence demonstrates appellant's action of obstructing Ashley's ability to pass created the situation that gave rise to the affray. Further, appellant did not testify and there was no surrounding evidence that would suggest appellant believed he was in imminent danger of death or great bodily harm when the choking occurred. Indeed, the evidence indicated appellant could have allowed Ashley to leave or leave himself without the use of any additional force. Given these facts, appellant was not entitled to a self-defense instruction.

{¶30} During the second incident, which occurred shortly after the first, appellant choked Ashley for approximately 30 seconds when she attempted to leave the bedroom. This situation can be reasonably viewed as an extension of the initial affray for which, as we have just concluded, appellant was at fault. And, again, there was no evidence that appellant believed he would suffer harm or that his only means of escape was to use the force he employed. To the contrary, he choked Ashley when *she* attempted to flee.

{¶31} Finally, the evidence demonstrated that appellant again choked Ashley as she was placing the couple's daughter in her car seat. This incident happened after Ashley left the trailer and, given the evidence, was a result of Ashley's apparent refusal to leave the child with appellant. Appellant pursued and initiated this affray as Ashley attempted to leave the scene. We therefore conclude there was no evidence to support a self-defense instruction vis-à-vis the third choking incident.

{¶32} Appellant's second assignment of error lacks merit.

{¶33} For his final assignment of error, appellant asserts:

{¶34} "The appellant's conviction for domestic violence is against the manifest weight of the evidence."

{¶35} A manifest-weight challenge requires an appellate court to consider the entire record, including the credibility of witnesses and potential conflicts in the evidence, and determine whether the jury clearly lost its way such that the verdict of guilty resulted in a manifest miscarriage of justice requiring a new trial. *See e.g. State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994). A judgment of a trial court should be reversed as being against the manifest weight of

the evidence "only in the exceptional case where the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶36}** Appellant claims the jury's verdict is against the weight of the evidence because Ashley initially shoved appellant and, in his estimation, the record fails to show he went too far in "defending himself." We do not agree.

**{¶37}** Even though Ashley pushed appellant first, the evidence demonstrated that appellant responded by shoving her hard enough for her to fall on the bed. And Ashley's initially testimony, that once on the bed, appellant only restrained her arms on her chest to prevent her from kicking him, was impeached; that is, her previous statements and grand jury testimony showed she had previously told police, a paramedic, and the grand jury that appellant choked her three separate times during the course of the altercation. The responding officers and paramedic also testified that Ashley had red marks around her neck, corroborating her initial statements. The jury chose to believe this testimony in lieu of appellant's and Ashley's mutual reconstructions of the altercation. We conclude the jury did not lose its way in doing so.

**{¶38}** Appellant's final assignment of error lacks merit.

**{¶39}** For the reasons discussed in this opinion, the judgment of the Trumbull County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.

11