[Cite as *State v. Sellers*, 2022-Ohio-581.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

ANTHONY W. SELLERS, JR.,

        Defendant-Appellant.

CASE NO. 2021-A-0016

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00209

# **O P I N I O N**

Decided: February 28, 2022
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Richard E. Hackerd*, 3539 West Boulevard, Cleveland, OH 44111 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}    Defendant-appellant, Anthony W. Sellers, Jr., appeals from his convictions for seven counts of Rape, following a jury trial in the Ashtabula County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2}    On April 3, 2019, the Ashtabula County Grand Jury issued an Indictment, charging Sellers with seven counts of Rape, felonies of the first degree, in violation of R.C. 2907.02(A)(1)(b). Counts One through Four specified that the victim was under the age of ten and the remaining counts specified that the victim was under the age of thirteen.

{¶3}    A jury trial was scheduled for February 4, 2020. Sellers left the trial during the

jury selection process and did not return. A warrant was issued for his arrest. A jury trial was subsequently held on May 4-6, 2021. The following pertinent testimony and evidence were presented:

{¶4} N.M., who was 15 at the time of her testimony, testified that Sellers, who was dating her mother, helped raise her. She recalled that when she was five years old, Sellers called her over to the bed where he was lying and she "believed" that he raped her. She testified as to several other instances at the age of six, seven, eight, nine, ten, and eleven where Sellers raped her, describing the circumstances and locations. She testified that the rapes occurred so often, probably once a week, that it "blend[ed] together."

{¶5} Tammy Corey, Sellers' stepmother, gained custody of N.M. following involvement by Ashtabula County Children Services with the family. N.M. moved into her house in August 2017. Within about a month, Corey observed "inappropriate behavior for a father and a child" between Sellers and N.M., including Sellers rubbing N.M.'s legs with his hand. Corey spoke with N.M. and, according to N.M., she initially denied that Sellers had assaulted her because she was scared to say anything, loved Sellers, and did not want "anything to happen." In May 2018, N.M. disclosed abuse to Corey, who called children's services and the police.

{¶6} Dana Berry, an ongoing family caseworker for Ashtabula County Children Services, testified that a case had been opened with ACCS relating to Sellers and his biological children and N.M. prior to the allegations of sexual abuse. After learning of the abuse allegations, Kayla Jones, an ongoing caseworker who was trained in forensic interviews, interviewed N.M. According to Jones, N.M. disclosed sexual abuse by Sellers.

2

Jones testified that in her training, delayed disclosure could be normal, she was not surprised by a delayed disclosure, and children need to feel safe in order to disclose abuse.

{¶7} Anthony Tulino, a City of Ashtabula police officer who is a specialized detective in juvenile sex crimes, observed the forensic interview in this case. He was questioned about reporting sexual assaults and testified that "in a lot of cases, sexual assaults aren't reported immediately after they occur." He also testified that, in his experience, not all children cry when reporting, they experience traumatic events differently, and some are more emotional than others.

{¶8} Frank Wolf, Sellers' friend, testified that he was present during one of the alleged occasions of rape that occurred while on a bike ride and that Sellers did not enter the restroom where N.M. stated the rape occurred. He testified that N.M.'s uncle was often in and out of her residence, took N.M. out of the house, and had a past child molestation charge.

{¶9} Sellers testified that he had been in a relationship with N.M.'s mother since N.M. was about 14 months old. He explained that he left his initial trial because he panicked.

{¶10} The jury found Sellers guilty of seven counts of Rape as charged in the indictment. Its verdict was memorialized in a May 7, 2021 Judgment on the Verdict.

{¶11} A sentencing hearing was held on June 30, 2021. The court ordered Sellers to serve consecutive terms of 15 years to life for Counts One through Four and 10 years to life for Counts Five through Seven for a total term of 90 years to life in prison.

{¶12} Sellers timely appeals and raises the following assignments of error:

{¶13} "[1.] The Trial Court permitted, and the Prosecutor engaged in prosecutorial misconduct.

{¶14} "[2.] The trial Court abused its discretion when it improperly admitted opinion evidence from witnesses who had not been qualified or offered as experts all to the defendant's prejudice.

{¶15} "[3.] The trial Court abused its discretion when it admitted inadmissible evidence to the Defendant's prejudice.

{¶16} "[4.] Defendant's Counsel was Ineffective."

{¶17} In his first assignment of error, Sellers argues that the prosecutor engaged in misconduct by making various improper statements during voir dire.

{¶18} "In reviewing a claim of prosecutorial misconduct, a court must determine whether the challenged statements were improper, and if so, whether the remarks affected the defendant's substantial rights." *State v. Doak*, 11th Dist. Portage No. 2018-P-0022, 2020-Ohio-66, ¶ 43, citing *State v. Smith,* 87 Ohio St.3d 424, 442, 721 N.E.2d 93 (2000). "A conviction will not be reversed because of prosecutorial misconduct, however, unless it so taints the proceedings that a defendant is deprived of a fair trial." *Id.*

{¶19} Since Sellers did not object to the prosecutor's statements, we review this issue under a plain error standard. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶20} Sellers first claims that the prosecutor "engaged in misconduct by altering or deleting portions of the statutory definition of beyond a reasonable doubt" by stating that

4

"firmly convinced" was the equivalent of "beyond a reasonable doubt." The prosecutor stated during voir dire: "You're going to hear a lot about reasonable doubt and the definition of it, and the Judge is going to define it for you at the end of this and you'll get a copy, a written copy, of what that is. But what we typically use as a place holder for it, another way to say it, so to speak, is to be firmly convinced; okay?" The prosecutor used the term "firmly convinced" multiple times during voir dire. We do not find this constitutes error.

{¶21} R.C. 2901.05(E) provides that "'[r]easonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge." The prosecutor was not incorrect in using "firmly convinced" to describe "beyond a reasonable doubt" as it is consistent with the statutory language.

{¶22} To the extent that Sellers argues it was misleading to use this phrase as a substitute for the entire definition of reasonable doubt, we find no merit to this argument. The prosecutor is not required to provide the full definition of this term during voir dire and it was evident he was using this description to aid in determining that jurors were able to generally understand the concept of reasonable doubt. In rejecting similar arguments that a prosecutor committed misconduct in voir dire by misstating the law and failing to mention the burden of proof, this court noted the lack of "substantial prejudice that affected the outcome of the trial because the jury was not yet impaneled and evidence was not yet introduced" and emphasized that the correct instruction on the law by the court cured possible misconceptions based on a prosecutor's use of examples. *State v. Hodgson*, 2021-Ohio-4374, __ N.E.3d __, ¶ 75-77 (11th Dist.). *See also State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 128 ("shorthand references" by the prosecutor to legal

5

concepts during voir dire which were "casual and imprecise" did not amount to plain error and were cured by jury instructions).  We find similar circumstances exist here where, even if the prosecutor's statements could be construed as errant, the court advised the jury that it "must not consider as evidence any statement made by an attorney during this trial" and gave a thorough and complete instruction regarding reasonable doubt:

> Reasonable doubt is present when jurors, after they have carefully considered and compared all of the evidence, cannot say they are firmly convinced of the truth of the charge.  It is a doubt based on reason and common sense.  Reasonable doubt is not a mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.  Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

There is no reason to believe that the statements made by the prosecutor regarding the standard misled the jury or impacted the outcome of the trial.

{¶23}  The cases cited by Sellers in support of his argument are distinguishable. Each of these cases is cited for the proposition that the reasonable doubt instruction should not be added to, amplified, or contradicted, but they relate to the court's jury instructions rather than the prosecutor's statements.  *State v. Swanson*, 16 Ohio App.3d 375, 377, 476 N.E.2d 672 (8th Dist.1984); *State v. Seneff*, 70 Ohio App.2d 171, 177-178, 435 N.E.2d 680 (8th Dist.1980); *State v. Sargent*, 41 Ohio St.2d 85, 90, 322 N.E.2d 634 (1975).  As explained above, where the court provides an accurate instruction, the risk of prejudice from incorrect or misleading statements by the prosecutor is mitigated.  It is worth observing that the court in *Seneff* also held that "the term 'firmly convinced' is a concise and easily understood synonym of the concept 'proof beyond a reasonable doubt.'"  *Id.* at 180.

{¶24}  Next, Sellers argues that the prosecutor improperly used "buying a home" as

6

an example of "one's most important affairs," thereby comparing it to the significance of reaching a verdict in this case.

{¶25} The characterization of buying a home as an important affair is not particularly inaccurate, nor does Sellers cite any authority for the proposition that such a statement is improper. The Ohio Supreme Court, in addressing an argument that the prosecutor denigrated the standard of reasonable doubt by stating that crossing a bridge is an important affair, held that, even if such comments "were perhaps inappropriate, we do not find that the comments denigrated the reasonable doubt standard" and concluded that the trial court's "'reasonable-doubt instructions negated any misconception by the jury.'" *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 79, citing *State v. Lundgren*, 73 Ohio St.3d 474, 484, 653 N.E.2d 304 (1995).

{¶26} Finally, Sellers argues that the prosecutor tried to give the jury a "preconception of the evidence" during voir dire by "repeatedly referring to the case as a rape case, the alleged crime as rapes, and the rapist as a stepfather." He cites no authority in support of this argument. We do not find that the prosecutor made any statements that amount to misconduct. The references made to rape were generally in the context of evaluating whether the jurors expected physical evidence in such a case or were particularly sensitive to this type of matter such that they could be a fair juror. It has been held that it was not error to allow the prosecutor to "outline the case's facts and evidence" during voir dire where it served a valid purpose, e.g., determining the prospective jurors' knowledge of the case. *State v. McCray*, 2017-Ohio-2996, 91 N.E.3d 288, ¶ 26 (1st Dist.). While the prosecutor did ask a juror if he would expect a five year old "for instance, say, [who] was raped by her stepfather, to be able to understand that let alone report that," it was in the

7

context of determining whether jurors would be able to evaluate the testimony of the witness and Sellers does not demonstrate that prejudice resulted from this statement. Given the subsequent testimony establishing the crime of rape, we do not find these statements prejudiced the jury.

{¶27} The first assignment of error is without merit.

{¶28} In his second assignment of error, Sellers argues that the trial court abused its discretion by allowing Jones, a social worker, to give opinions regarding delayed disclosure when she was not an expert. Similarly, he argues that Officer Tulino should not have been permitted to testify as to how children react to trauma and that these questions were "inflammatory" because they preempted his defense that a delayed disclosure is less reliable.

{¶29} The admission or exclusion of evidence, including lay testimony, is evaluated under an abuse of discretion standard. *State v. Parks*, 11th Dist. Lake No. 2019-L-097, 2020-Ohio-4524, ¶ 94. Pursuant to Evid.R. 701, which governs the admission of lay testimony: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶30} Tulino testified that he is a "specialized detective" with his sole specialty being the investigation of sex crimes and juvenile sex crimes in particular, performing over a hundred sexual abuse investigations. This court has permitted lay testimony given by a police officer where it is based on his perceptions and experience and would assist the jury in the determination of disputed issues of fact. *State v. Sanchez*, 11th Dist. Ashtabula No.

8

2018-A-0097, 2020-Ohio-5576, ¶ 91-93; *see also State v. Harris*, 162 N.E.3d 879, 2020-Ohio-5306, ¶ 83 (11th Dist.) (an officer is permitted to give lay testimony regarding his expertise on behavioral and language patterns of people commonly observed on the streets). It has also been held that where an officer who is trained in child abuse cases provides testimony arising from his or her experience about delayed disclosures, such as that it is common for children to delay their disclosure, this testimony is admissible as lay opinion testimony. *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 111 (2d Dist.). Here, Tulino's testimony relating to how children react when reporting sexual abuse was based on his experience and aided the trier of fact in reaching its determination on the fact of whether abuse occurred.

{¶31} As to Jones, it has similarly been held that testimony by a social worker "about the manner in which sexually abused children disclose the nature of their abuse based on her experience with such cases," is admissible lay opinion testimony. *State v. Mathis*, 8th Dist. Cuyahoga No. 107365, 2019-Ohio-3654, ¶ 61-63. We find that the testimony about delayed disclosure was based on Jones' experience and training in conducting forensic interviews of child sex abuse victims. Although it is accurate that she has limited experience in conducting interviews and had completed approximately ten, this gave her experience that the average juror did not have and could assist in the determination of a factual issue.

{¶32} The second assignment of error is without merit.

{¶33} In his third assignment of error, Sellers argues that Jones should not have been permitted to testify that the child told her "a penis went into a vagina" during the interview as this was hearsay. He also argues that the "activity report" exhibit from ACCS which had notes from the social worker interview should not have been admitted.

{¶34} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.,* 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991); *State v. Dyer*, 2017-Ohio-426, 84 N.E.3d 57, ¶ 40 (11th Dist.) (admission of hearsay is evaluated under an abuse of discretion standard).

{¶35} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion. Evid.R. 801(A).

{¶36} Sellers argues that the social worker was not permitted to "testify that the child told her a penis went into a vagina." Jones did not testify specifically that N.M. made that statement but did testify that this was her "understanding" of what occurred. Sellers does not advance an argument as to whether Jones' characterization of the disclosed abuse constitutes hearsay although it was not framed as the exact statement made by the victim. Courts have found a party's testimony as to their understanding of a conversation to be admissible. *See State v. Parker*, 2d Dist. Montgomery No. 18926, 2002-Ohio-3920, ¶ 67 (witness' statement that he had permission to be in the apartment was admissible since it was based on his understanding and did not "communicate * * * any statement" of the apartment owner); *State v. Ijuju*, 10th Dist. Franklin No. 85AP-803, 1986 WL 9616, *5 (Sept. 2, 1986) (witness' testimony about her understanding that the defendant was going to kill the victim based on overhearing his discussion was admissible).

{¶37} Nonetheless, even presuming that the foregoing testimony was inadmissible hearsay, Jones testified multiple times that sexual abuse had occurred based on the child's

10

disclosure and circling of body parts on a diagram, statements with which Sellers does not take issue. Thus, the statement at issue merely reaffirmed other evidence present in the record. This court has found no prejudice in admitting improper hearsay where it was "merely cumulative of other testimony presented." *State v. Conway*, 11th Dist. Lake No. 95-L-040, 1997 WL 361694, *6 (June 20, 1997); *State v. Williams*, 11th Dist. Trumbull No. 2012-T-0002, 2013-Ohio-1297, ¶ 21.

{¶38} Sellers also argues that the ACCS "activity report," which contained information from the interview with N.M., contained testimonial statements, applying the primary purpose test.

{¶39} The primary purpose test, used to determine whether statements made by a witness are testimonial for Confrontation Clause purposes, provides the following: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 24, citing *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). This principle has also been applied to forensic interviews conducted by entities other than police such as representatives from a child advocacy center. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 33.

{¶40} In the present matter, presuming the primary purpose of gathering information here was to establish events for criminal prosecution and the statements were testimonial,

11

the Confrontation Clause issues raised by such a finding do not warrant reversal. It has been consistently held that "[t]he admission of hearsay does not violate the Confrontation Clause if the declarant testifies at trial." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 64; *State v. Curtiss*, 2d Dist. Montgomery No. 29006, 2022-Ohio-146, ¶ 89 (where the victim's statement was testimonial under the primary purpose test, the Confrontation Clause was not violated since she testified at trial and was subject to cross-examination). Here, the victim testified and was cross-examined so Confrontation Clause concerns do not arise.

{¶41} The third assignment of error is without merit.

{¶42} In his fourth assignment of error, Sellers argues that counsel was ineffective by failing to object to the foregoing evidence and making statements conceding guilt.

{¶43} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶ 10.

{¶44} Defense counsel did object to the admission of hearsay statements as well as

12

the activity report.  Further, as to each of the alleged errors above, since we find they either lack merit or did not result in prejudice, they do not provide grounds for reversal based on ineffective assistance of counsel.

{¶45}  Sellers also argues that counsel was ineffective by stating, during voir dire that "nobody is stating [N.M. is] not a victim."  It appears, however, that this was part of counsel's trial strategy.  Such a statement could be made to demonstrate Sellers' sympathy for the victim.  Further, the defense presented the testimony of Sellers' friend, Wolf, that another adult in N.M.'s life had been present at the house frequently, took her out of the household, and had a record of child sexual abuse.  It appears the defense had a strategy of demonstrating that another individual may have committed the offenses.  "A reviewing court must not second-guess trial strategy decisions."  *State v. Tipton*, 11th Dist. Portage No. 2012-P-0072, 2013-Ohio-3207, ¶ 31.

{¶46}  The fourth assignment of error is without merit.

{¶47}  For the foregoing reasons, Sellers' convictions for Rape in the Ashtabula County Court of Common Pleas are affirmed.  Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, J.,

JOHN J. EKLUND, J.,

concur.

13

Case No. 2021-A-0016