[Cite as *State v. Zink*, 2026-Ohio-868.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2025-04-026 |
| Appellee, | : | CA2025-06-047 |
| vs. | : | OPINION AND |
| | | JUDGMENT ENTRY |
| THOMAS LEE ZINK, | : | 3/16/2026 |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2024 CR 000160

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Paul Croushore and Clyde Bennett II, for appellant.

## O P I N I O N

**SIEBERT, J.**

{¶ 1} Thomas Lee Zink appeals his conviction for 11 counts of gross sexual imposition and six counts of unlawful sexual conduct with a minor. Zink argues the trial court committed three errors at trial: (1) overruling objections regarding a detective's lay

testimony on the frequency of delayed disclosures in sexual abuse cases; (2) limiting Zink's cross-examination of a victim as to purportedly false allegations she made against another person (her father); and (3) overruling his objection to statements made by the prosecution during closing argument about defense counsel and Zink's mother.

{¶ 2} Upon review, we overrule each assignment of error. We conclude the trial court did not abuse its discretion in allowing a detective's lay testimony regarding the frequency of delayed disclosures in child abuse cases because he was trained and experienced on the topic. In addition, the trial court properly limited questioning on the victim's purported prior and false allegation of sexual assault by her father because such questioning was based on inadmissible extrinsic evidence that, at best, tangentially referred to the issue. Finally, the prosecutor's sarcastic and pointed comments about Zink's counsel and mother during closing argument were made as parts of larger, permissible arguments and were not prejudicial to the overall fairness of Zink's trial.

**Background**

{¶ 3} Though the factual and procedural history of this case is long and at times confusing, we need only examine specific parts of the record to address Zink's assignments of error. In summary, a grand jury indicted Zink in February of 2024 on 12 counts of gross sexual imposition, 12 counts of unlawful sexual conduct with a minor, two counts of disseminating matter harmful to juveniles, two counts of endangering children, and two counts of corrupting another with drugs. Zink pled not guilty to the charges of the indictment, and the matter proceeded to a jury trial in February 2025.

{¶ 4} During trial, the State argued that Zink sexually abused his two stepsisters, Jane and Alice.[1] Jane and Alice are the daughters of Zink's stepfather, Jeff. Zink's sexual

---

1. "Alice" and "Jane" are pseudonyms adopted for this opinion for the purposes of privacy and readability.

abuse of Jane involved Zink having her straddle his lap while he would grind his erect penis against her and touch her breasts, buttocks, and vagina. The sexual abuse of Alice involved digital penetration, fellatio, and vaginal intercourse. Alice and Zink also exchanged explicit photos and messages and used marijuana together. These instances of abuse spanned from 2016 to 2019.

*Delayed Disclosure*

{¶ 5}   Jane and Alice did not disclose their abuse until telling their paternal grandmother in March 2021, and this delayed disclosure became a point of contention at trial. During trial, the State called upon Emily Harmon as an expert witness. Harmon worked as a social worker for the Mayerson Center for Safe and Healthy Children at Cincinnati Children's Hospital Medical Center where she conducted over 2,000 forensic interviews, including those of Jane and Alice. Harmon testified that in her experience, "most" of the children she interviewed delayed the disclosure of their abuse. Harmon asserted there were various reasons for this, including shame, the abuser was a family member, fear they would not be believed, and that disclosing would get themselves or their family in trouble. However, on cross-examination by Zink's counsel, Harmon agreed she had no specific opinion on why Jane and Alice delayed their disclosure or whether they were telling the truth and had, in fact, been abused.

{¶ 6}   Detective Swallen, the State's representative at trial and one of the detectives on the case, also testified at trial. His professional experience included 17 years in law enforcement. In the years immediately preceding Zink's trial, Swallen's investigations focused predominately on sexual or physical abuse of children. In addition

---

*See State v. Cansler*, 2025-Ohio-2558, ¶ 1, fn. 1 (12th Dist.), *Supreme Court of Ohio Writing Manual* 115 (3rd Ed. 2024).

to investigating approximately 100 child sexual assaults, Det. Swallen regularly received continuing education on child abuse and taught educators on the symptoms and warning signs of child abuse.

{¶ 7}   During trial, Det. Swallen testified that in his experience, "over seventy percent of child victims are going to disclose usually five years later in life or after the event happened." Zink objected to this testimony, but the trial court overruled the objection holding that Zink could press the issue further on cross-examination. Det. Swallen subsequently testified that delayed disclosure often occurs because the "victims like to disassociate with the situation and part of that is they like to rid themselves of, of that event." Zink did not specifically object to this testimony at trial.

*Prior Allegation of Abuse?*

{¶ 8}   At another point during trial—during the defense's cross-examination of Alice—Zink sought to impeach her testimony by questioning her about a previous, purportedly false allegation that her father, Jeff, had sexually abused her. During a court recess, Zink's counsel referred to a transcript from Jeff's divorce from Tiffonie Caudill, Zink's mother, in which he testified that Alice "didn't want to come over for two months" during a dispute Jeff had with his previous wife. According to Zink's counsel—who spoke with Zink and Tiffonie—this statement in the transcript referred to a period of time where Alice was removed from Jeff's home after she—purportedly—falsely alleged Jeff sexually abused her. Zink's counsel and the trial court agreed that while counsel could not use the transcript as extrinsic evidence, counsel could ask Alice if she had made a false allegation against Jeff and would be "stuck" with her answer to the question. When counsel subsequently asked Alice about whether she had made a false allegation of sexual abuse against Jeff, Alice simply replied "no."

*Closing Arguments*

{¶ 9} During closing arguments, Zink's counsel discussed Harmon's cross-examination testimony and noted, "She gives no opinion whatsoever on the credibility of the claimants or the alleged victim. She said that . . . the purpose of [her] interviewing [victims] is to gather information to pass onto the rest of [her] team for treatment and diagnosis." Zink's counsel further observed that Harmon "did not have an opinion about whether or not Jane or Alice were telling the truth."

{¶ 10} The prosecutor later remarked that while Zink's counsel "want[ed] to take all the credit for Harman" agreeing that she had no opinion about the veracity of Jane and Alice's allegations, Harmon "had to" agree because "[t]hat's not her job. That's not her role. She is a neutral witness. I would never have asked her does this mean that she was abused by this man? Never . . . But he wants to take all the credit for it. Fine." The trial court overruled the subsequent objection of Zink's counsel but cautioned the prosecutor that those arguments were "a little more personal maybe than it needs to be."

{¶ 11} The prosecutor later called Tiffonie "an evil, wicked stepmother" to Alice and Jane and asserted that if Zink were "so innocent you better believe [Tiffonie] would have had those [phone/message] records. You'd better believe the police would have had his cell phone." The trial court overruled Zink's immediate objection, asserting the statements were not evidence.

*The Verdict and Sentencing*

{¶ 12} The jury found Zink guilty of 11 counts of felony gross sexual imposition and six counts of unlawful sexual conduct with a minor. The other charges were ultimately dismissed. At sentencing, the trial court imposed an aggregate prison term of 18 years.

{¶ 13} Zink now appeals.

**First Assignment of Error – Lay v. Expert Testimony**

{¶ 14} Zink argues the trial court erred in allowing Det. Swallen's testimony regarding delayed disclosures because the testimony on this "key issue" improperly bolstered their credibility. Zink postulates that Harmon's "weak" expert testimony on delayed disclosures compelled the State to bolster it with Det. Swallen's lay opinions. Det. Swallen's testimony, Zink asserts, should have been required to meet expert testimony requirements.

*Standard of Review and Applicable Law*

{¶ 15} "'A trial court has considerable discretion in admitting the opinion testimony of lay witnesses.'" *State v. Speis*, 2023-Ohio-1422, ¶ 30 (12th Dist.), quoting *State v. Marshall*, 2010-Ohio-5160, ¶ 43 (2d Dist.). However, an abuse of discretion, meriting reversal, occurs where the trial court's decision is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} A witness "*may* testify as an expert" if all of the following are demonstrated:[2]

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case . . .

(Emphasis added.). Evid.R. 702. In order to testify as an expert witness, "a written report

---

2. "In statutory construction, the word 'may' is construed as permissive while the word 'shall' is construed as mandatory, unless there appears a clear and unequivocal legislative intent that these words receive a construction other than their ordinary usage." *State ex rel. Moore v. Fornshell*, 2025-Ohio-65, ¶ 19 (12th Dist.).

summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion . . . includ[ing] a summary of the expert's qualifications" must be timely prepared and disclosed to all parties prior to trial Crim.R. 16(K). "Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial." *Id.*

{¶ 17} If a witness "is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. The Supreme Court of Ohio recognized that nonexpert, lay opinion evidence is proper on matters outside of common knowledge when the witnesses' opinion is "rationally based on firsthand observations and helpful in determining a fact in issue." *State v. McKee*, 2001-Ohio-41, ¶ 13. Stated differently, if the lay opinion is "not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience" such testimony is permissible. *Id.*

{¶ 18} Though lay witnesses were traditionally "required to testify as to facts rather than opinions . . . the practical possibility of distinguishing between fact and opinion proved to be elusive, if not impossible to draw" and led to the creation of evidentiary rules that removed this rigid distinction. *Id.* at 296. "[C]onsistent with this emerging view . . . courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702." *Id.*

{¶ 19} As a result of this trend, "[i]t is well-settled that a police officer may testify concerning matters that are within his experience and observations that may aid the trier of fact in understanding the other testimony pursuant to Evid.R. 701." *State v. Tatum*, 2011-Ohio-907, ¶ 17 (10th Dist.); *State v. Speis*, 2023-Ohio-1422, ¶ 31 (12th Dist.), quoting

*Tatum*. More specifically, courts have permitted police officer lay opinion testimony concerning children's delayed disclosure of sexual abuse. "[W]here an officer who is trained in child abuse cases provides testimony arising from his or her experience about delayed disclosures, such as that it is common for children to delay their disclosure, this testimony is admissible as lay opinion testimony." *State v. Sellers*, 2022-Ohio-581, ¶ 30 (11th Dist.), citing *State v. Jones*, 2015-Ohio-4116, ¶ 111 (2d Dist.).

*Analysis*

{¶ 20} In light of this clear precedent, we conclude the trial court did not abuse its discretion in admitting Det. Swallen's testimony concerning Alice and Jane's delayed disclosure of being sexually abused by Zink. Det. Swallen possessed vast experience on the topic of delayed disclosures, including (1) 17 years of experience as a law enforcement officer, (2) several years of more specific experience in investigating approximately 100 child abuse cases, and (3) regularly teaching about and attending seminars/continuing education on child abuse. Nonetheless, Zink asserts that parts of Det. Swallen's testimony—such as his assertion that "over seventy percent of child victims" delay their disclosures—rose to a level of "specificity and certainty lacked any basis under Evid.R. 702, was prejudicial . . . unfairly biased the jury, and violated Mr. Zink's right to a fair trial." While Swallen's testimony may have indeed been more specific and certain than simply saying its delayed disclosures are "common," that does not mean his testimony could not be "rationally based on his training and personal experience in child abuse cases, [or] aid[] the trier of fact in determining [Alice and Jane's] credibility" *Jones* at ¶ 111. Zink had the ability to question and challenge the specificity of Det. Swallen's statements at trial but did not do so. We therefore ultimately conclude the trial court did not abuse its discretion in admitting this testimony.

{¶ 21} We overrule this assignment of error.

**Second Assignment of Error – Limiting Cross-Examination of Alice Regarding Prior, Purportedly False Allegations of Abuse**

{¶ 22} Next, Zink argues the trial court erred in not permitting him to further cross examine Alice over whether she had a made a false allegation against Jeff as it was probative of her credibility. Zink contends "the evidence was admissible under Evid.R. 616(A) to show bias, prejudice, or motive for misrepresentation."

{¶ 23} There are two main issues with Zink's contention. First is that Zink does not identify the "evidence" he claims was improperly excluded. If Zink is referring to testimony Alice may have provided if he had been permitted to further cross-examine her on the subject, the record does not (indeed, cannot) reflect what that testimony would have been. Assuming for the sake of argument Zink refers to the transcript from Jeff's divorce proceeding, we fail to see any error by the trial court in not admitting it because Zink's trial counsel agreed that the transcript could not be used as extrinsic evidence to prove Alice's potential character for untruthfulness. Generally speaking, extrinsic evidence cannot be used to prove an individual's character for untruthfulness. *See* Evid.R. 608. Moreover, none of the statements within the transcript were Alice's—they were Jeff's— and they were, at best, ambiguous statements that *possibly* alluded to an *allegedly* false allegation of sexual abuse in the past. The only reason in the record for us to believe even this much is the assertion by Zink's trial counsel that Zink and Tiffonie told him it was so. Such tangential support ultimately cannot be the basis for extended questioning on this issue.

{¶ 24} The second issue with Zink's argument is even if we were to assume Jeff's testimony referred to a false allegation of abuse by Alice against him, such falsity would perhaps show bias, prejudice, or motivation for misrepresentation against Jeff, but not

Zink.

{¶ 25} We also overrule this assignment of error.

**Third Assignment of Error – Prosecutorial Misconduct**

{¶ 26} Finally, Zink argues the prosecutor's comments during closing arguments about defense counsel (regarding the defense's cross-examination of Harmon being effective) and Zink's mother (including her being "an evil, wicked stepmother") were too personal and derogatory. As a result, Zink asserts the trial court erred in overruling his objections.

{¶ 27} For remarks in closing arguments to be deemed prosecutorial misconduct, the statements must be improper and must be prejudicial to a defendant's substantial rights. *State v. Miller*, 2021-Ohio-162, ¶ 44 (12th Dist.). Stated differently, "a defendant must show that the improper acts were so prejudicial that the outcome of the trial would clearly have been different had those improper acts not occurred." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 42 (12th Dist.). As a result, "[t]he focus of 'an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor.'" *State v. Combs*, 2020-Ohio-5397, ¶ 19 (12th Dist.), quoting *State v. Gray*, 2012-Ohio-4769, ¶ 57 (12th Dist.); *see also Miller*, 2021-Ohio-162, at ¶ 45. Ultimately, a defendant is entitled to "a fair trial, not a perfect one." *State v. Kaaz*, 2017-Ohio-5669, ¶ 102 (12th Dist.).

{¶ 28} Here, the prosecutor's comments about defense counsel, when viewed holistically, clearly sought to establish to the jury that Harmon was never meant to testify as to her opinion on the truth or falsity of Alice and Jane's allegations. Her job was merely to document them. Viewed in that light, the prosecutor's comments merely expressed some frustration that defense counsel put Harmon into a corner the prosecutor believed

- 10 -

the witness should not have been placed in to begin with.

{¶ 29} Similarly, the prosecutor's comments about Tiffonie sought to demonstrate to the jury that (1) Tiffonie did not have a good relationship with the girls, and (2) her testimony in favor of Zink—her biological child—could be viewed as an attempt to help cover up his crimes. While the prosecutor's comments could have perhaps been less sarcastic and personal (a sentiment the trial court also expressed), none of the comments rose to the level of being improper. Even if they had, we cannot conclude the result of the trial would have been different were they not made because, again, they were part of larger arguments made by the prosecutor regarding the questioning of witnesses and witness motivations.

{¶ 30} We overrule this final assignment of error.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

## <u>J U D G M E N T   E N T R Y</u>

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge